## GRAHAM, Estate of, In Re.

Probate Court, Franklin County.

No. 109142.

Ray W. Poppleton, Columbus, for John F. Seidel.
Alexander W. Speddon, Jr., for Bessie Evelyn Gerth et al., Roland Sedgwick, Kenneth Hampton, Columbus, Attys.

### OPINION

By McCLELLAND, J.

This matter comes before the court on the application of John F. Seidel, as administrator de bonis non with the will annexed of Cora B. Graham, deceased, against Roland A. Sedgwick, as administrator of the estate of Lawrence W. Gerth, deceased, and other defendants, asking for a construction of the will of the decedent, and for a Declaratory Judgment on certain matters growing out of the will, which matters will be set forth later herein.

Cora B. Graham died on January 17, 1944, testate, and her will was admitted to probate on the 25th day of January, 1944. To the petition is attached a copy of the will. Item Two of the will reads as follows:

"Item Two. I give, devise and bequeath to my daughter, Mary Elizabeth Gerth, all of my property, both real and personal, during the period of her natural life. During the said

period of her life, she shall have full authority and power to manage and control the said property, without the intervention of any court, and to invest and re-invest the same as she shall deem to be for the best interest of the said estate, and for her own individual interest; and she shall expend the income thereof, and as well the principal if she so desire, for her comfort and convenience without accounting to any one therefor. If in the management and control of my said estate, she should sell any real estate belonging to my estate, or any re-investment in real estate, I hereby authorize and empower her, in her own individual name, to execute and deliver to the purchaser, or purchasers, thereof a good and sufficient deed, conveying the fee simple title thereto to such purchaser, or purchasers, therefor."

Item Three is in the following language:

"Item Three: I give, devise and bequeath the remainder of my property, upon the termination of the said life estate of my said daughter, to my brothers and sisters, and their legal representatives, per stirpes, in fee."

The next paragraph of the will designates Mary E. Gerth to be the executrix of the will, and that she be permitted to act without giving bond.

The first question raised by the petitioner is as to the construction of Item Two of the will, as to whether Mary Elizabeth Gerth had a life estate or a fee simple estate in the property devised. This court can conceive of no language which would more clearly create a life estate with power to sell, and a remainder, than that language contained in the above quoted item.

A cardinal case in Ohio decisive of the question at bar is the decision of the Supreme Court of Ohio, in the case of **Johnson et al, v. Johnson**, reported in **51 Oh St** at page **446**, the syllabi of such case are as follows:

"1. A testator, after providing for the payment of his debts, used the following language in his will: "Second—I give and devise unto my beloved wife, and her assigns, all of remainder of my property, both real and personal, however the same may be known, or wheresoever the same may be situate, with full power to bargain, sell, convey, exchange or dispose of the same as she may think proper; but, if at the time of her decease, any of my said property shall remain unconsumed, my will is that the same be equally divided between my brothers and sisters, and their children, if deceased, the children to have the same amount the parent would be entitled to if living" HELD: That under this will the widow took only a life estate in the property, both real and per-

sonal, with power to bargain, sell, convey, exchange or dispose of the same as she might think proper for consumption in her life support, and that what remained at the time of her death, unconsumed in supporting her, belongs to the remaindermen designated in the will.

2. The widow under this will was, by implication, a quasi trustee for those in remainder, and the interest of the brothers and sisters of the testator, in the unconsumed property, was a vested right which could not be destroyed by the act of the widow in disposing of the property by gift to a third party, or otherwise than for her support or the benefit of the estate.

3. A third party acquiring said estate from her by gift or fraud, or by collusion with her, to the injury of the vested rights of those in remainder, and with knowledge of the will, holds the same, and the fruits thereof, as a trustee for the remaindermen, and liable as such trustee, to account to them in equity."

It is our opinion that Mary Elizabeth Gerth, by the will of her mother, was given a life estate in the property devised, with power of sale. This power of sale was limited to the particular purposes set forth in Item Two of the will of the testatrix. By the terms of this will she was permitted to use the entire income, and principal as well, if she so desired, for her comfort and convenience. If a life tenant, acting under a power of sale, sells property in which she has a life estate, such portion of the proceeds as are not used for the express purposes given in the will, the life tenant holds the unexpended portion as a trustee for the benefit of the remaindermen. Inasmuch as she is a trustee, she must exercise good faith toward the remaindermen. At page 460 of the Johnson Case hereinbefore referred to, we find the following significant language:

"Having construed this will as giving to the widow only an estate for life, it follows that the brothers and sisters of the testator had a vested remainder in so much of the estate as should remain unconsumed by her at her death. The amount of this vested remainder was uncertain so long as the widow continued to live, and the whole of it was liable to be divested in case she should consume the whole of the estate for her support during her lifetime." **Jeffers v. Lampson, 10 Oh St, 101; Linton v. Laycock, 33 Oh St, 128.**

Perry on Trusts, in section 540, says that those in possession of a life estate under a legal title are implied or quasi trustees for the remaindermen.

We regard this rule as applicable here, and that while the widow was given the legal title with full possession, and power

to use, dispose of and consume the estate, for her life support, the duty rested upon her, in the nature of a trust, to have due regard for the rights of those in remainder, as to the part of the estate not consumed by her for her support. That while she could use and enjoy the estate to its fullest extent for her support, and consume the whole of it if necessary, she could not go beyond what would be regarded as good faith toward the remaindermen. The testator having so amply provided for the support of his wife, evidently contemplated good faith on her part towards his brothers and sisters. He therefore gave her the right to consume, but not to recklessly squander or give away the estate.

Applying the above stated principles to the will in question it is our opinion that the testatrix gave her daughter Mary Elizabeth Gerth a life estate in the property with the remainder to her brothers and sisters. She was given a power of sale for the specific purpose mentioned in Item Two of the will, and, in case she should sell said property therein devised she is held to be a trustee for that portion of the proceeds of the property sold and not used by her for the purposes mentioned in the will.

It is a cardinal rule in the construction of wills that they shall be so construed as to vest the remainder at the earliest possible time. By virtue of a long line of decisions in Ohio, this Court finds that the interest of the remaindermen under the will of Cora B. Graham vested at the time of her death, and could be divested only to the extent as permitted by the life tenant for the purposes named in the will.

The record in this case discloses that Cora B. Graham at the time of her death was the owner of one piece of real estate located on Brinker Avenue in the City of Columbus, Ohio, and another piece of property located on West Broad Street in the City of Columbus, Ohio

The record further discloses that on March 17, 1945, the life tenant, acting under the power of sale, sold the property on Brinker Avenue. The evidence also discloses that on March 28, 1945, a parcel of real estate located on Glenview Avenue in the City of Columbus, was purchased and the title was put in Mary E. Gerth and Lawrence W. Gerth, her husband, as tenants in common.

The evidence also discloses that on August 29, 1945, the West Broad Street property was sold by Mary Elizabeth Gerth, acting under authority contained in said will. On November 25, 1947, Mary E. Gerth died intestate, and her only heir was her husband Lawrence W. Gerth.

The record in this case further discloses that on April 29,

1948, the one-half interest in the Glenview Avenue property was transferred to Lawrence W. Gerth as her sole and only heir. On October 26, 1948, Lawrence W. Gerth died, intestate, leaving as his only heir his mother Bessie W. Gerth. On May 9, 1950, Bessie W. Gerth died testate, leaving her two daughters as the sole devisees under the will.

The record also discloses that Cora B. Graham, at the time of her death, in addition to the two pieces of real estate hereinbefore mentioned, was possessed of a miscellaneous lot of household furniture of the value of $150.00, one diamond ring valued at $350.00, and one diamond pin valued at $150.00. There was also cash in the sum of $71.00 a certificate of deposit with The Buckeye Federal Savings & Loan Company of the face value of $500.00.

The plaintiff alleges that Lawrence W. Gerth, the husband of Mary Elizabeth Gerth knew the terms and provisions of the will of Cora B. Graham, and the nature and extent of the estate created thereby; that he further knew that the said Mary Elizabeth Gerth was and would be subject to duress, control and influence, and took possession and control of the said estate in fraud of the rights of the remaindermen under the will of Cora B. Graham.

The plaintiff further alleges that on or about the 27th day of March, 1945, Mary Elizabeth Gerth sold and conveyed away a parcel of real estate described as 2275-2277 West Broad Street, in the City of Columbus, Ohio, for a sum of money in excess of $10,500.00, and, on or about the 29th day of August, 1945, sold and conveyed away the two parcels of land known as 48-50 Brinker Avenue in said City of Columbus, Ohio, and that the sale price was in excess of $6500.00, and that she also converted into cash the household furniture hereinbefore mentioned for the sum of $371.00; that she appropriated the cash in the estate in the amount of $71.00, and converted into cash a certificate of deposit in The Buckeye State Federal Bldg & Loan, the sum of $500.00, making a total of $17,942.00 realized from the assets of the estate of Cora B. Graham.

The petitioner further alleges that from the funds arising from the proceeds of sale of the estate of Cora B. Graham, another parcel of real estate was purchased, said parcel being known and designated as 2373 Glenview Boulevard.

The plaintiff further alleges that United States Government bonds Series "E," each of the value of $1000.00 were purchased with the proceeds of said sale.

It is further alleged in the petition that the property known as 2373 Glenview Boulevard was put in the names of Mary Elizabeth Gerth and Lawrence W. Gerth, as tenants in common.

The plaintiff further alleges that from the date of the death of Cora B. Graham, on January 17, 1944, until her own death November 25, 1947, Mary Elizabeth Gerth did not use or consume for the comfort and convenience of herself, nor for any personal needs or wants, any of the corpus of the funds received from the estate of Cora B. Graham.

The petitioner further claims that Mary Elizabeth Gerth, subsequent to the sale of the above named properties, paid the mortgages existing thereon, and that the remainder of the proceeds of said property was invested in the property on Glenview Boulevard, and claims that said property is impressed with a trust in the amount of the net proceeds which went into that property.

During the lifetime of Lawrence W. Gerth and subsequent to the death of the life tenant Mary Elizabeth Gerth, a suit was filed in the court of Common Pleas of Franklin County, Ohio, by Ella B. Sparks, one of the sisters of Cora B. Graham, who is one of the remaindermen named in said will, against Lawrence W. Gerth, individually, and as administrator of the estate of his deceased wife Mary E. Gerth. This suit is Number 175059 in the records of the Franklin County Common Pleas Court. During the pendency of that action Lawrence W. Gerth was called as a witness, and his testimony was taken under oath as upon cross-examination. The testimony was reduced to writing by a public stenographer, a transcript thereof was made, which became a part of the record of that court. Subsequent thereto, upon the application of one of the defendants the case was dismissed.

Upon an examination of the pleadings in that case we find that it is the same cause of action as the one upon which the case now before the court is based.

A transcript of the testimony of Lawrence W. Gerth, taken in the Common Pleas Court has been offered by the plaintiff in support of the allegations contained in his pleading. Counsel for the heirs of Mary Elizabeth Gerth strenuously objected to the introduction of said transcript. The court received such testimony subject to the objection of the above named counsel, and announced that upon further consideration of same a final ruling upon the admissibility of same would be made. The court has examined that transcript and now determines the questions of its admissibility.

There is no question but that this testimony is hearsay evidence.

Counsel for the heirs of Bessie Gerth has called our attention to §11495 GC, and especially to sub-divisions 7 & 8 thereof. Sub-section No. 7 is as follows:

"If after testifying orally, a party dies, the evidence may be proved by either party on a further trial of the case, whereupon the opposite party may testify to the same matters;"

Sub-section No. 8 reads as follows:

"If a party dies and his deposition be offered in evidence, the opposite party may testify as to all competent matters therein."

Our attention is also directed to §11496 GC, the latter part of the above named section containing the following language:

"* * * If no bill of exceptions has been taken or signed as aforesaid, but the evidence of such party or witness has been taken down by an official stenographer, the evidence so taken may be read in evidence by either party on the further trial of the case, and shall be prima facie evidence of what such deceased party or witness testified to orally on the former trial. If such evidence has not been taken by such a stenographer, it may be proved by witnesses who were present at the former trial, having knowledge of such testimony. All testimony so offered shall be open to all objections which might be taken, if the witness was personally present."

It is the contention of the devisees of Bessie Gerth that this testimony may not be received by the Court for the reason that it is not a trial of the same case. We are cognizant of the fact that the case now before the Court is not the same proceeding in which the testimony was taken. It is very obvious, however, that it is a trial of the same cause of action between the same parties or their personal representatives or persons holding thereunder. We believe that that testimony is admissible as being within the purpose and spirit of those statutes.

But even though the testimony would not be admissible under the provisions of the statutes hereinbefore referred to, it might be admissible under some non-statutory rules of evidence pertaining to the admission of hearsay testimony.

In Vol 20, American Jurisprudence, page 402, Section 453, there is discussed by the author thereof exceptions to the rule excluding hearsay testimony. The philosphy upon which the statement of the author is made, and the statements so well fortified by citations that we consider it appropriate to incorporate in our decision that discussion as follows:

"452. **EXCEPTIONS TO RULE.**—While the hearsay rule has been asserted and applied so often that it is not questioned, it seems safe to assert that the courts have generally been willing to relax the rule in the interest of justice It is recognized that hearsay may be relevant and material. In some cases it may be the only relevant and material evidence, as

where a sole witness to a transaction is dead or beyond the reach of a subpoena. While the mere fact that a witness is dead does not render his declarations admissible, if in addition to the death of a witness there are circumstances which attribute verity to his declarations, the hearsay rule may be relaxed to permit the admission of such declaration. For example, if a witness is deceased, his declarations against his own interest may be admitted in evidence as relevant and material to the issues in the case on the theory that he would not tell an untruth against his own interest. Again, the dying declarations of the victim of a homicide are deemed admissible notwithstanding they are hearsay, on the theory that there is little likelihood of a conscious falsification of statements made under such circumstances. Most of the exceptions to the hearsay rule are based upon the necessities of the case. If there is a possibility of obtaining testimony other than hearsay, the law does not generally permit the introduction of hearsay. Thus, one of the conditions under which entries in family records are admitted in evidence, notwithstanding the lack of an opportunity to cross-examine the person who made them, is the death, or at least the absence, of such person. In other instances, however, evidence of a hearsay character, such as testimony concerning the age of a person and his race, is admitted without reference to the fact that other testimony of a strong character is available. Many exceptions to the hearsay rule are treated specifically in other parts of this article.

As a rule, hearsay is inadmissible without reference to the character of the proceeding or the nature of the court before which it is offered. The fact that a court of domestic relations may inform itself by hearsay evidence when acting as a disinterested adviser or conciliator does not permit it to receive such evidence when exercising a strictly judicial function, such as determining a motion in a divorce suit for the allowance of temporary alimony. Hearsay has been said to have no more place in a Juvenile Court than in any other court. The nature of the proceeding, however, is sometimes a ground for an exception to the hearsay rule. For example, statutes may abrogate the rule in respect of workmen's compensation proceedings."

Now, with that in mind, let us go back to the transcript. Upon an examination of the transcript we find that Lawrence W. Gerth was called as a witness as upon cross-examination on June 7, 1948. The transcript discloses that he was duly sworn before he testified. He testified that he was the husband of Mary Elizabeth Gerth; that prior to the sale of the properties hereinbefore mentioned he was familiar

with the terms of the will of Cora B. Graham. He also testified that the property on North Brinker Avenue was sold by Mary Elizabeth Gerth to Marshall E. and Carrie E. Greer, and that the consideration for same was $10,900.00. He did not know whether he joined in the deed or not. He also testified that out of the proceeds of that sale Mary Elizabeth Gerth gave him $5000.00 in round numbers; that the property was subject to a mortgage of $5600.00 or around $5000.00. He also testified that she gave him the $5000.00 because she felt she was returning the money that he had given her over a period of twenty-five years. He also testified that he put it in his bank account in The City National Bank. He also testified that a piece of property was purchased at 2373 Glenview Boulevard.

At page 14 of the transcript the following question was asked:

Q. Then did you use that money to purchase 2373 Glenview Blvd?

A. Yes, I used part of it.

On page 15 the following question is asked:

Q. Do you recall how long it was before you purchased that Glenview Avenue property after the sale of the Broad Street property?

A. It was very short time, a matter of a day or two, possibly a day.

He also testified that the purchase price of the Glenview Blvd property was $8000.00.

He also testified that he paid $4500.00 in cash and gave a mortgage for $3500.00, and that $4500.00 was paid by check on The City National Bank.

As to the property at 23-75-2377 W. Broad Street, he testified that Mary Elizabeth Gerth sold that property for the sum of $7000.00.

In answer to the question as to the disposition of the $7000.00 by Mary Elizabeth Gerth, he says she paid off the mortgage of $2500.00 or $2600.00 that was on the property, and I think she gave me about $4000.00.

From an examination of the transcript of the testimony of Lawrence W. Gerth, this Court is impelled to find that $4500.00 of the sale of the first property went into the purchase of the property on Glenview Boulevard. Mary Elizabeth Gerth had no right to give this property away. She was acting as trustee for the remaindermen. The rule of law laid down in the third syllabus of the Johnson Case precludes the validity of such an act. Lawrence W. Gerth knew the conditions of the will of Cora B. Graham. He knew that Mary

Elizabeth Gerth had a life estate. He knew that the remaindermen under said will were the brothers and sisters of the testatrix. He knew, at least constructively, that his wife, the life tenant, was a trustee of the proceeds of the sale for the benefit of the remaindermen under the will of Cora B. Graham He was, therefore, not acting in good faith when he accepted said money and invested it in other real estate in the name of himself and his wife. It is immaterial whether he took the title in his own name solely or whether he took it in the names of both of them as common ownership. The entire property is impressed with a trust for the benefit of the remaindermen under the will of Cora B. Graham subject to the lien of The Buckeye State Federal Building & Loan Company.

But even though the testimony of Lawrence W Gerth as shown by the transcript thereof should be inadmissible as not coming within any exception to the hearsay rule, and, disregarding it altogether, the circumstances are so strong as to lead this court to hold that the property purchased in the name of Lawrence W. Gerth and Bessie Gerth is a trust property for the benefit of the remaindermen under the will of Cora B. Graham.

By virtue of the foregoing authority this court is compelled to hold that the declaration of Lawrence W. Gerth as shown by the testimony is a declaration against interest. In addition thereto it is admissible for the reason that it is apparently the only evidence available as to the facts of that transaction.

Counsel for the heirs of Bessie Gerth have caused to be introduced in evidence certain checks of Lawrence W. Gerth made payable to his wife Bessie Gerth.

It is the opinion of this court that these checks are immaterial and irrelevant to this issue. The $4500.00 going directly from Mary Elizabeth Gerth to her husband. and from his bank account directly into the Glenview Blvd. property fixes the equitable ownership of the remaindermen under the will of Cora B. Graham in that property. Whether he ever reimbursed her is immaterial.

The record is silent as to any expenditure of any portion of the proceeds of that sale by Mary Gerth for the purposes mentioned in the will, and, that being the situation, she must be accountable for the entire price of the properties, and any profits or increments arising therefrom.

As to the sale of the household furniture and other personal assets of the decedent, and the proceeds of said sale,

the record is not such as to trace it into any specific property.

Although the proceeds of the sale of that personal property cannot be traced into any specific chattel or real property, it is our opinion that it is now in the estate of Lawrence W. Gerth.

At page 16 of the transcript we find the testimony of Lawrence W. Gerth as to the proceeds of the sale of the West Broad Street property. He testified that the proceeds amounted to $7000.00, and that from said proceeds she paid a mortgage and gave to him, according to his recollection the sum of $4000.00.

The inventory in the estate of Lawrence W. Gerth discloses that he had a gross estate in the amount of $20,997.76, which included the value of the Glenview Avenue Heights property. It also discloses that he had personal goods and chattels in the amount of $3,177.00. The first account filed in that case, which is the only one filed, discloses that certain obligations have been paid in the amount of $10,044.00, and there still remains in that estate $5,008.51. This amount is held by Roland Sedgwick as administrator of his estate. By his testimony he admits that he received $4000.00 from the sale of the West Broad Street property.

When one is in possession of trust funds and mingles the same with his own and spends a portion thereof, it is presumed that he spends his own money first, and that any money left is impressed with a trust to the extent of the trust property in his hands.

It is therefore the holding of this court that the amount of money in the hands of the personal representative of Lawrence W. Gerth is impressed with a trust in the amount of $4000.00, together with interest from the date Lawrence W. Gerth received same.

We have not taken up the questions in the order in which they are propounded by the petitioner, but we believe we have answered all of them and an order may be drawn in accordance with this decision.

Roland W. Sedgwick as administrator of the estate of Lawrence W. Gerth, filed in this court, Case Number 131020, a suit against Bessie W. Gerth et al, defendants, in which petition the same issues are raised as are raised in the case now before this court.

At the hearing of this matter counsel for all parties agreed that the testimony taken in the Graham Case might be used as testimony in the case filed by Mr. Sedgwick. It is our opinion that the decision in the Graham Case will answer

all the questions raised in the case filed by Mr. Sedgwick, and our decision may be used as the decision in that case.

Counsel for the respective parties are therefore requested to prepare the appropriate journal entries in both cases according to our foregoing decision.